# R.L.K. AND COMPANY *v.* STATE TAX COMMISSION

Norman J. Wiener, Portland, tried the cause for plaintiff. Norman J. Wiener, and King, Miller, Anderson, Nash & Yerke, Portland, filed briefs for plaintiff.

Richard Rink, Assistant Attorney General, Salem, tried the cause and Richard Rink and Theodore de Looze filed a brief for defendant.

Decision for plaintiff rendered June 30, 1964.

PETER M. GUNNAR, Judge.

This is a suit to set aside defendant's Opinion and Order No. VL 63-84, which affirmed the Clackamas County Assessor's valuation of plaintiff's real property interest at Timberline Lodge. The court viewed the premises prior to trial.

Timberline Lodge is a federally owned resort in the Mount Hood National Forest. Since the 1930s, the

Timberline area of Mount Hood has attracted more and more weekend and vacation visitors for skiing, mountain climbing, horseback riding, hiking, and other sports and recreation in both summer and winter. In 1938, the federal government built the Lodge with WPA labor and since that time the area has acquired an international reputation as a public playground.

From the time of its construction until 1955, except during World War II, private groups operated the Lodge under special use permits issued by the United States Forest Service. Financially unsuccessful, the last prior operator went bankrupt in the spring of 1955. For several months thereafter the Forest Service staff ran the resort. Later that year, plaintiff was organized to take over the Lodge under a term special use permit. In 1959, plaintiff's original permit was replaced by the term permit in effect on January 1, 1962, the assessment date in controversy.

Before 1958, the permit area contained Timberline Lodge proper, the "Magic Mile" chair lift, the Silcox warming hut situated a mile above the Lodge, and several smaller structures. Since 1958, plaintiff has enhanced these facilities with its own funds by adding a second chair lift and a heated swimming pool adjoining the Lodge.

On May 1, 1962, the Clackamas County Assessor assessed the fair market value of plaintiff's interests at Timberline Lodge, as of January 1, 1962, at $88,000 for its interest in federal property and $124,630 for the chair lift and swimming pool. Upon plaintiff's appeal, defendant affirmed the assessor's determination.

Plaintiff contends that the assessor and defendant erred in this assessment on three grounds. First, plain-

tiff claims to be constitutionally exempt from state or county ad valorem taxation as an instrumentality of the United States. In the alternative, if not constitutionally tax exempt, plaintiff contends that it is not taxable under Oregon law because it did not hold Timberline Lodge "under a lease or other interest or estate less than a fee simple," as ORS 307.060 requires for taxability. Finally, as a third alternative, if it is taxable, plaintiff contends that the assessor and defendant erroneously determined the extent of plaintiff's interest in the swimming pool and chair lift and the value of plaintiff's interests generally.

## FEDERAL INSTRUMENTALITY

██ Neither the statutes nor the cases clearly define a federal instrumentality immune from state and local taxation. The case law considers each factual situation without reaching generally applicable rules.

> "* * * The application of the principle which denies validity to such a tax has required the observing of close distinctions in order to maintain the essential freedom of government in performing its functions, without unduly limiting the taxing power which is equally essential to both nation and state under our dual system. * * *" *James v. Dravo Contracting Co.*, 302 US 134, 150, 58 S Ct 208, 82 L ed 155 (1937).

██ Existing guidelines in this vague field are summarized in two 1958 United States Supreme Court decisions. *United States v. Township of Muskegon,* 355 US 484, 78 S Ct 483, 2 L ed2d 436 (1958); *Detroit v. Murray Corp.,* 355 US 489, 78 S Ct 458, 2 L ed2d 441 (1958). Divided six to three in the first case and five to four in the second case, the Supreme Court upheld a state's right to tax government contractors on their

possessory rights in federal property, because the contractors used the property in their own commercial, profit-making activities. It held that such taxation neither cripplingly obstructed any government function nor discriminated against the federal government, its property, or those with whom it is doing business. (355 US at 495). Both the majority opinions and the dissents are enlightening.

■ In the earlier *Dravo* case, *supra,* to which the majority in *Muskegon* and *Detroit* frequently referred, Mr. Chief Justice Hughes pointed out (302 US at 153):

> "* * * 'Taxation of the agency is taxation of the means; taxation of the property of the agent is not always, or generally, taxation of the means. Thomson v. Union P. R. Co. 9 Wall. 579, 591, 19 L ed 792, 798. * * *' "

From *Union Pacific R. R. Co. v. Peniston,* 18 Wall 5, 33, 36, 21 L ed 787, 792, 793, he quoted (302 US at 154-5):

> "It is, therefore, manifest that exemption of Federal agencies from state taxation is dependent, not upon the nature of the agents, or upon the mode of their constitution, or upon the fact that they are agents, but upon the effect of the tax; that is, upon the question whether the tax does in truth deprive them of power to serve the government as they were intended to serve it, or does hinder the efficient exercise of their power. A tax upon their property has no such necessary effect. It leaves them free to discharge the duties they have undertaken to perform. A tax upon their operations is a direct obstruction to the exercise of Federal powers."

In *Muskegon,* citing *Dravo,* Mr. Justice Black noted (355 US at 487):

> "* * * In a number of cases this Court has upheld

state taxes on the activities of contractors performing services for the United States even though they were closely supervised in performing these functions by the government. \* \* \*"

In *Detroit*, the Court pointed out (355 US at 494):

"\* \* \* Of course the government will eventually feel the financial burden of at least some of the tax but the one principle in this area which has heretofore been clearly settled is that the imposition of an increased financial burden on the Government does not by itself invalidate a state tax."

■ On the other hand, in *Muskegon* the Court recognized the possibility of a relationship close enough to confer federal immunity, when it said (355 US at 486):

"\* \* \* The case might well be different if the government had reserved such control over the activities and financial gain of Continental that it could properly be called a 'servant' of the United States in agency terms. But here Continental was not so assimilated by the Government as to become one of its constituent parts. It was free within broad limits to use the property as it thought it advantageous and convenient in performing its contracts and maximizing its profits from them."

■ These cases recognize two types of immunity, immunity *per se* and consequential immunity. The distinction lies in whether the proposed taxpayer's acts are acts of the federal government or are merely acts of a private contractor performing his contract with the federal government. To step into the government's immunity *per se*, a taxpayer must be a "servant" of the government in the closest sense and not merely a profit-making independent contractor performing an act useful to the federal government. As a "servant," the taxpayer is immune because he is, in fact, the federal government's alter ego.

To envelope an independent contractor using federal property in consequential federal immunity, a state tax must deprive the contractor of his ability to perform his government contract. The contractor's immunity arises as a consequence of his federal contract only when such immunity is essential to the performance of that contract. The ultimate payment of tax by the federal government in its price paid for goods or services is immaterial to the federal immunity question. Also immaterial is the maintenance by the government of close supervision and control over a contractor using government property.

These guidelines make this case a close one. Plaintiff corporation is organized for profit. It does not receive a fixed fee or wage comparable to a "servant's" salary. Rather it operates Timberline Lodge as a commercial venture in order to earn its income.

The evidence established that the operation of Timberline Lodge itself is economically unsound. Built by the government to provide labor for the unemployed, the Lodge is a massive monument to the need for the profit motive. It is a monster to operate and challenges man's ingenuity to keep it going. No profit-conscious operator would construct or operate such lodge alone. The evidence also established that the ski lifts and other skiing facilities return substantial profits. Hard as it is to operate, the Lodge has tremendous drawing power for skiing and mountaineering enthusiasts and its drawing power financially benefits plaintiff's other profitable facilities. Plaintiff's special use permit entitles it to operate the profitable skiing facilities in return for its operation of the unprofitable Lodge under the close supervision and direction of the United States Forest Service. It does not operate the Lodge as a federal

servant but rather as consideration for its permit to earn a profit operating skiing facilities on that site.

Because they are government property and are advertised as an attraction of Mount Hood National Forest, the United States has a substantial interest in the price and nature of the services offered at the Lodge and in the maintenance of the government-owned facilities. To protect its interest, the Forest Service provides in its special use permit for supervision and control of plaintiff's activities by the Mount Hood National Forest Supervisor. The special use permit allows plaintiff to use the Lodge only "for the purpose of operating a public resort." The Forest Service reserves a right to approve plaintiff's charges to the public and the right to review and change the "fee schedule" of plaintiff's payments for its permit interest. To enforce its control it has the right to inspect all plaintiff's financial records and tax returns. It has negative control over those who shall be plaintiff's stockholders. It supervises the quality and number of plaintiff's personnel. It must approve any shutdown of Lodge operations. It oversees the Lodge's physical appearance, including the location of vending machines and furnishings and equipment owned by the government. Plaintiff cannot change, alter, or improve the Lodge without Forest Service approval. Plaintiff cannot assign or sublet either the permit or any of the properties subject to the permit without government consent. The Forest Service itself maintains public relations and rescue facilities at the Lodge.

To properly maintain this nationally famous ski resort in its National Forest, the Forest Service pours all plaintiff's permit payments back into Lodge improvements. Under the permit, plaintiff has the right

to make improvements for which it is entitled to credit against its payments. In fact, plaintiff has expended more money on improvements for which it is entitled to credit than it owes in payments.

The purpose of federal supervision is not to operate the Lodge itself but to protect the government's interest from being ignored by plaintiff in its profit-making commercial venture. Such supervision does not make plaintiff a "constituent part" of the federal government. The government could operate the Lodge itself. By so doing it might make a little more money at a substantial inconvenience and strain upon government personnel. Instead, it permits plaintiff to do so. Plaintiff's relationship to the government is somewhat analogous to that of a concessionaire to the department store in which he operates. The department store could operate the concession but it finds it more efficient not to do so. Yet it must retain substantial control over the concessionaire in order to protect the store's reputation and to realize its percentage income. The department store's control and need for the concession does not merge the independent concession with the store for tax purposes. The government's control and need for the operation of Timberline Lodge does not merge plaintiff with the government for state tax purposes.

The Supreme Court considered a factual situation similar to this case in *Muskegon, supra.* In that case the federal government owned a manufacturing plant and needed its production. It could operate the plant itself or it could lease the plant to a private operator. Rather than operate it, the government leased it to Continental Motors Corporation, which supplied the needed goods and did not include any plant amortization in the price of the goods supplied. The Court

upheld state taxation of Continental Motors' interest in the government property. Whether or not plaintiff's permit is technically a lease, there appears no less reason to sustain plaintiff's taxability.

■ Plaintiff's operation of a federal installation and its performance of a function which the federal government needs to have performed does not make it a federal instrumentality. The operation of the government facility on a competitive basis for profit purposes does not make plaintiff a government servant and immune *per se.* Nor does the supervision provided in the special use permit make plaintiff the government's servant. Despite the Forest Service's extensive supervision, the evidence of this case does not establish that plaintiff "is so assimilated by the government as to become one of its constituent parts." *United States v. Township of Muskegon, supra* (355 US at 486). There is no evidence that the state and county property tax destroys plaintiff's ability to perform its government contract. Therefore, plaintiff is not consequentially immune. In this case, the tax does not fall ultimately upon the government by the terms of the permit. Since plaintiff is not a federal instrumentality, either *per se* or consequentially, it has no immunity from state and local taxation.

## APPLICABILITY OF ORS 307.060

■ Plaintiff next contends that its interest under its special use permit is nonpossessory and not subject to tax under ORS 307.060. This section imposes a property tax on the holders of possessory interests in federal government property but not upon easements, profits, and other incorporeal interests in such property. *Sproul v. Gilbert,* 226 Or 392, 423, 359 P2d 543

(1961). Plaintiff's permit is for a term of 15 years, subject to termination upon breach of condition. The Forest Service uses space in the Lodge and closely supervises the Lodge's maintenance and plaintiff's charges and accounting. Plaintiff contends that these restrictions render its interest nonpossessory.

Mr. Justice O'CONNELL thoroughly reviewed the pertinent cases in *Sproul, supra.* His opinion recognizes inherent distinctions between traditional commercial leases and possessory interests acquired from government agencies. (226 Or at 408). Almost every restriction contained in plaintiff's special use permit is expressly considered in the *Sproul* opinion. All are clearly covered expressly or by implication. That case establishes that these restrictions are not sufficient to destroy the possessory character of plaintiff's interest under the special use permit. Beyond peradventure ORS 307.060 subjects plaintiff's interest in Timberline Lodge to tax.

## VALUATION

The subject property's valuation presents an extremely difficult and unique appraisal problem because Timberline Lodge is truly unique. Its construction to keep idle hands busy and not as a commercial establishment, its extreme difficulty of operation, the inadequacy of its overnight accomodations, and the super-adequacy of its public facilities depress and confuse its valuation. On the other hand, its site also is unique and the right to operate skiing facilities at that site with the support of federal government advertising and promotion has substantial value. All these unique features which add to, or detract from, the Lodge's fair market value require the utmost appraisal

skill, originality and experience to measure this value in dollars and cents with any apparent accuracy.

The appraisal problem is further complicated by the language of ORS 307.060. The applicable part of this statute reads:

> "307.060 Real and personal property of the United States or any department or agency thereof held by any person under a lease or other interest or estate less than a fee simple, other than under a contract of sale, shall be assessed and taxed as for the full true cash value thereof subject only to deduction for restricted use. * * *"

This language almost defies rational and practical interpretation.

The parties interpret this statute to require valuation of the government's interest subject to the restricted use. In other words, both appraisers have attempted to value Timberline Lodge as though it were owned by an individual, but restricted to governmental uses and encumbered by the special use permit.

After considering all three usual approaches to value, the commission's appraiser adopted his income approach value. In that approach, he computed the life of plaintiff's interest as 25 years, although plaintiff's permit term is only 15 years. He used the 25-year life or recapture calculation because he was appraising the supposed individual landlord's or permittor's interest which would not end with the permit's expiration. Furthermore, he valued the pool and lower chair lift at book value, although it does not fully consider plaintiff's restricted interest and the integral nature of these improvements in the overall facility.

Similarly, at the direction of plaintiff's counsel, plaintiff's appraiser tried to determine the amount

which a hypothetical purchaser would pay to step into the shoes of the United States Forest Service as the subject property's owner restricted by the special use permit now in effect. He concluded that the value of this white elephant in the hands of anyone foolish enough to buy the Forest Service's interest would be ten dollars.

In all its ethereal and complicated mental gymnastics, the parties' appraisal method is in error. The Supreme Court has clearly indicated that the subject of tax under ORS 307.060 is the permit holder's interest. *Sproul v. Gilbert, supra.* (226 Or at 420). Usually a tenant's interest is taxed to the landlord as part of the entire fee and the tenant contributes his share in his rent. However, when the landlord is immune from taxation, the state has the right to tax the tenant's interest separately. (226 Or at 421-2).

Though the statute provides for the valuation of the tenant's interest by determining the value of the fee and reducing that value by a deduction for the restricted use, it does not direct the determination of the value of the landlord's interest, subject to the restricted use. If it were to do so, it would be taxing the interest of the United States as well as the permittee's interest. This value would unconstitutionally exceed the value of the permittee's interest. Oregon Constitution, Art IX, § 1. It would also seek to tax indirectly what the state cannot tax directly.

In this unique appraisal and under the vague and complicated terms of ORS 307.060, the appraiser must never lose sight of the interest which he is appraising, the tenant's or permittee's interest. Rather than tax the permittee upon the value of the fee in the hands of a hypothetical individual permittor, the proper construction of ORS 307.060 establishes a method of

determining the value of the permittee's interest. When it requires that the permittee's interest shall be the value of the fee restricted by the property's restricted use, it contemplates all the restrictions, including the term of the taxpayer's interest.

 Correctly interpreted, ORS 307.060 requires the appraiser to first determine the value of Timberline Lodge as though it were owned by an individual subject to none of the restrictions to which the federal government is subject. But this is not the interest being valued. It is merely a starting point for determining the value of the permittee's interest. Then the appraiser's job is to determine the value of that part of this entire fee which the permittee holds. To determine this figure, he should reduce the unrestricted fee value by applying to it the restrictions of the permit, including the 15-year term and plaintiff's GT payments in lieu of rent, and the restrictions inherent in the federal government's ownership of the fee. In refining his valuation an appraiser should remember also that "This is not a case in which the determination of the taxable value of a unique property should be lost in rigid adherence to the customary rules and terminology of the appraiser's art. * * *" *Strawn v. State Tax Com.*, 236 Or 299, 305, 388 P2d 286 (1964). The appraiser should take into account the various techniques of all appraisal methods and modify them to suit the uniqueness of the property being taxed.

██ This is the only logical construction of ORS 307.060. Under it the appraiser values plaintiff's interest and not that of some fictional and unrealistic landlord or permittor. His appraisal conforms to the Supreme Court's decision in *Sproul*. While *Sproul* approves of the use of the unrestricted fee value as a

starting point, it merely recognizes the constitutionality of beginning the appraisal computation with the value of the unrestricted fee and should not be construed to direct taxation to the permittee of a fictional permittor's interest.

Some confusion in this case arises from the prior statute, which plainly directed appraisal of the permittee's interest. Counsel have misled the appraisers by assuming too great a change in legislative meaning from the statute's amendment.

In summation, this court concludes that plaintiff is not a federal instrumentality; that plaintiff is subject to state and local ad valorem property taxes; that plaintiff's interest in Timberline Lodge is a possessory interest taxable under ORS 307.060; that both parties erred in determining the fair market value of plaintiff's interest; and that the value of plaintiff's interest should be determined in the manner set forth above.

At this point, the court should remand this case to the commission for its redetermination of the value of plaintiff's interest in accordance with this decision. The parties may prefer, however, to shorten this procedure by agreeing that this court shall determine the value issue after reappraisal in accordance with this decision. Either course is satisfactory to this court.

Defendant shall prepare a decree setting aside defendant's order and remanding this case to the commission for a determination of the value of plaintiff's interest in accordance with this decision, unless within 20 days of the entry of this decision, the parties shall join in a motion that this court reopen this cause for further testimony and for a determination of such value in this court rather than before the commission.